IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-32-D

BADRY BADRY ALI, )
)
                Plaintiff, )
)
v. )     **ORDER**
)
UNITED STATES DEPARTMENT )
OF STATE, et al., )
)
              Defendants. )

On January 20, 2023, Badry Badry Ali ("Ali" or "plaintiff") filed a complaint against the United States Department of State, United States Embassy in Cairo, Egypt, United States Secretary of State Antony Blinken, and Ambassador of the United States at the United States Embassy in Cairo, Egypt, Daniel Rubinston (collectively, "defendants") asking this court to issue a writ of mandamus compelling defendants to adjudicate his son's visa petition [D.E. 1]. On March 31, 2023, defendants moved to dismiss the complaint [D.E. 10] and filed a memorandum in support [D.E. 11]. See Fed. R. Civ. P. 12(b)(1), (6). On April 13, 2023, Ali responded in opposition [D.E. 12]. On April 27, 2023, defendants replied [D.E. 13]. As explained below, the court grants defendants' motion to dismiss and dismisses without prejudice Ali's complaint.

I.

A United States citizen or lawful permanent resident seeking to sponsor their foreign adult child for an immigrant visa must file a Form I-130 with U.S. Citizenship and Immigration Services ("USCIS"), which is under the purview of the Department of Homeland Security ("DHS"). See 8 C.F.R. § 204.1(a)(1). DHS has an internal policy known as the Controlled Application Review and

Resolution Program ("CARRP"). See Compl. [D.E. 1] ¶ 24. Ali alleges that "CARRP prohibits USCIS field officers from approving an application with a potential national security concern, instead directing officers to deny the application or delay adjudication—often indefinitely—in violation of the INA." Id. at ¶ 27. Ali alleges that CARRP broadly defines national security concerns "based on deeply-flawed and expansive government watchlists, and other vague and overbroad criteria that bear little, if any, relation to the security-related statutory ineligibility criteria." Id. at ¶ 28.

If USCIS approves the Form I-130, USCIS sends the approved Form I-130 to the National Visa Center ("NVC"), which is under the purview of the Department of State ("State Department"), not the DHS. See 8 C.F.R. § 204.2(a)(3). After the NVC receives the Form I-130, the foreign citizen child must submit a DS-260–Immigrant Visa Electronic Application, the required supporting documents, and necessary fees to the NVC. See 22 C.F.R. §§ 42.65, 42.67(a). Once the NVC receives these documents, the NVC determines the case to be "documentarily complete," and the foreign citizen child can be scheduled for an appointment for an interview to make a visa petition before a consular officer. See 22 C.F.R. § 42.67(a)(1), (a)(3). The NVC schedules appointments in the chronological order of the documentarily complete cases. See 9 FAM 504.4-6a. The U.S. embassy or consulate determines the availability of an appointment. See id.

Ali is a U.S. citizen. See Compl. ¶ 1. Ali's son, Abdelrahman Badry Soliman Badry, is a citizen and resident of Egypt. See id. at ¶ 2. On February 25, 2021, Ali filed a Form I-130 for his son. See id. at ¶ 13. On October 25, 2021, USCIS approved Ali's Form I-130. See id. at ¶ 15. The Form I-130 was sent to NVC, and NVC assigned a case number to the Form I-130. See id. at ¶ 16. Since then, the agency has not scheduled an interview or made a decision. See id.

2

Because Ali's son is a citizen and resident of Egypt, the scheduled NVC interview would take place at the U.S. Embassy in Cairo, Egypt (the "Cairo Embassy"). See [D.E. 11] 4. The United States alleges that due to the onset of the COVID-19 global pandemic, the State Department suspended visa services at all U.S. embassies and consulates around the world in March 2020. See id. Due to the backlog caused by COVID-19 and staffing shortages at the Cairo Embassy, there remains a significant backlog in scheduling interviews for immigrant visa petitions. See id. Therefore, for the past approximately year and a half, Ali and his son have been waiting for an interview date or decision. See Compl. ¶¶ 16–17; [D.E. 12] 4.

II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the "court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction. See, e.g., Steel Co., 523 U.S. at 103–04; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

3

Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

4

Ali alleges that defendants unlawfully withheld and unreasonably delayed the adjudication of his son's visa case in violation of 5 U.S.C. § 706(1). See Compl. ¶¶ 19–33; [D.E. 12] 7–17. Ali's complaint consists of a CARRP-related claim, a request for mandamus, and an APA claim. See Compl. ¶¶ 19–33; [D.E. 12] 7–17. Ali also alleges that defendants violated his rights under the Due Process Clause of the Fifth Amendment by failing to provide a reasonable and just adjudication framework. See Compl. ¶¶ 34–37; [D.E. 12] 17–18.

A.

As for Ali's CARRP-related claim, Ali alleges that defendants intentionally delayed adjudicating his son's visa case because of CARRP. See Compl. ¶¶ 19–33; [D.E. 12] 7–17. Defendants respond that Ali lacks an injury sufficient to establish standing because CARRP only applies to DHS, and DHS, through USCIS, moved Ali's son's visa application to the next step and is no longer involved in Ali's son's visa process. See [D.E. 11] 9–11; [D.E. 13] 1–3. Defendants also argue that, even assuming the court has subject-matter jurisdiction over the CARRP-related claim, Ali fails to state a plausible claim for relief. See [D.E. 11] 12; [D.E. 13] 3.

A plaintiff establishes standing by showing: (1) injury-in-fact, that the plaintiff has "'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'"; (2) traceability, that "'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court'"; and (3) redressability, that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)); see Spokeo, Inc.

5

v. Robins, 578 U.S. 330, 337–38 (2016). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560; see Spokeo, Inc., 578 U.S. at 337–38. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claim. See, e.g., Lujan, 504 U.S. at 560–61; White Tail Park, Inc., 413 F.3d at 459; Payne v. Sears, Roebuck & Co., No. 5:11-CV-614, 2012 WL 1965389, at *2–3 (E.D.N.C. May 31, 2012) (unpublished).

CARRP does not apply to a Form I-130. See, e.g., Begum v. United States Dep't of State, No. 1:22-CV-00478, 2022 WL 16575703, at *4 (D. Md. Oct. 31, 2022) (unpublished); Ahmed v. U.S. Dep't of Homeland Sec., No. 21-CV-893, 2022 WL 424967, at *3 (D.D.C. Feb. 11, 2022) (unpublished). CARRP is a DHS policy. See Compl. ¶ 24. DHS already completed its role in Ali's son's visa process by approving the Form I-130. Id. at ¶ 15. Moreover, the defendants are not DHS, and CARRP does not apply to the defendants. The only allegation Ali makes connecting DHS to the defendants is that the Department of State "regularly works with" DHS. Id. at ¶ 23; see [D.E. 12] 7. And the only allegation Ali makes that CARRP even applies to this visa petition is that "[o]n information and belief . . . [d]efendants are intentionally delaying a response . . . pursuant to the CARRP program." Id. at ¶ 25. Ali lacks standing to sue because CARRP does not apply to a Form I-130. CARRP only applies to DHS, and Ali's allegations to the contrary are too speculative. See, e.g., Begum, 2022 WL 16575703, at *3–5 (collecting cases); Nusrat v. Blinken, No. 21-2801, 2022 WL 4103860, at *1 (D.D.C. Sep. 8, 2022) (unpublished) (collecting cases); Alshawy v. U.S. Citizenship & Immigr. Servs., No. CV 21-2206, 2022 WL 970883, at *4 (D.D.C. Mar. 30, 2022) (unpublished); Ahmed, 2022 WL 424967, at *3; Mahmood v. U.S. Dep't of Homeland Sec., No. 21-CV-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (unpublished). Accordingly, Ali does not have standing to sue for his CARRP-related claim. Thus, the court dismisses the claim.

6

As for Ali's request for mandamus and APA claim, defendants argue that the court lacks subject-matter jurisdiction over those claims because there is no discrete agency action that a consular officer must take. See [D.E. 11] 12–20; [D.E. 13] 4–9. Defendants also argue that, even if the court has subject-matter jurisdiction, Ali fails to state a plausible claim for relief because the delay is not unreasonable as a matter of law. See [D.E. 11] 20–28; [D.E. 13] 9.

As for subject-matter jurisdiction, the APA "does not provide judicial review for everything done by an administrative agency." Invention Submission Corp. v. Rogan, 357 F.3d 452, 459 (4th Cir. 2004) (citation omitted). Instead, under the APA, a court can only compel agency action that has been "unlawfully withheld or unreasonably delayed" where a plaintiff asserts "that an agency failed to take <u>a discrete agency action that it is required to take</u>." Gonzalez v. Cuccinelli, 985 F.3d 357, 365–66 (4th Cir. 2021) (emphasis added); Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). Ultimately, "[f]ailures to act are sometimes remediable . . ., but not always." Norton, 542 U.S. at 61. A claim alleging that an agency has "unlawfully withheld" agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Id. at 64 (emphasis omitted). Accordingly, the statute "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." Id. (cleaned up).

To bring a claim of unreasonable delay under the APA, "[t]he central question . . . is 'whether the agency's delay is so egregious as to warrant mandamus.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 79 (D.C. Cir. 1984) (cleaned up) (hereinafter "TRAC"); Vietnam Veterans of Am. v. Shineski, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform

7

a duty owed to the plaintiff." 28 U.S.C. § 1361. But a writ of mandamus is a drastic remedy. See, e.g., Kerr v. United States Dist. Ct. for N.D. Cal., 426 U.S. 394, 402 (1976); In re Beard, 811 F.2d 818, 826 (4th Cir. 1987). Federal courts have traditionally used the writ only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943). "[O]nly exceptional circumstances amounting to a judicial usurpation of power" will justify issuance of the writ. Will v. United States, 389 U.S. 90, 95 (1967) (quotation omitted). A party seeking mandamus must show "that its right to issuance of the writ is clear and indisputable." Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953) (quotation omitted).

"To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016) (quotation omitted) (emphasis added); see Cumberland Cnty. Hosp. Sys., Inc. v. Burwell, 816 F.3d 48, 52 (4th Cir. 2016); United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 511 (4th Cir. 1999). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." Am. Hosp. Ass'n, 812 F.3d at 189. Ali contends that 8 U.S.C. § 1202(b) and 5 U.S.C. § 555(b) create specific, non-discretionary duties that give this court jurisdiction to decide Ali's request for mandamus and APA claim. See Compl. ¶¶ 19–33; [D.E. 12] 10–14.

As for 8 U.S.C. § 1202(b), it states, in part, that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Section 1202(b), however, does not create a specific, non-discretionary duty. The quoted portion of section 1202(b) concludes a long paragraph describing the documentation that visa applicants must provide and to whom they

8

must provide it. See id. "Read in context, this sentence cabins the State Department's discretion as to who may review and adjudicate immigrant visa applications; it does not mandate that all applications actually be adjudicated." Babamuradova v. Blinken, Civ. A. No. 22-1460, 2022 WL 4479801, at *9 (D.D.C. Sept. 27, 2022) (unpublished); see Zarei v. Blinken, Civ. A. No. 21-2102, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021) (unpublished). Section 1202(b) applies to all visa applications and holding that this one phrase requires every visa application to be adjudicated "would truly be the proverbial elephant in a mousehole." Zarei, 2021 WL 9146060, at *1 (citing Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 468 (2001)).

Congress gave the Secretary of State broad discretion to "administ[er] and [] enforce[]" the Immigration and Nationality Act, 8 U.S.C. § 1104, and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of State." 22 U.S.C. § 2651a. Congress also gave each Chief of Mission to a foreign country broad discretion to oversee U.S. government operations in that country. See 22 U.S.C. § 3927. Furthermore, visa "[i]nterviews are scheduled based on, among other things, the capacity of the consular offices and embassies." Babamuradova, 2022 WL 4479801, at *9. Thus, "[i]f a post does not have capacity to interview someone—thereby reviewing and adjudicating their visa application—it cannot do so." Id. Although in some cases courts have allowed APA challenges to survive the jurisdictional hurdle citing 8 U.S.C. § 1202(b), in those cases, "Congress supplied a statutory deadline for adjudication, and the Secretary's prioritization scheme ignored that limit or otherwise rested on misinterpretations of law." Ramirez v. Blinken, 594 F. Supp. 76, 88 (D.D.C. 2022); see Gomez v. Biden (Gomez III), No. 20-CV-1419, 2021 WL 3663535, at *17 (D.D.C. Aug. 17, 2021) (unpublished); Filazapovich v. Dep't of State, 560 F. Supp. 3d 203, 239–40 (D.D.C. 2021). Here, no such circumstances exist. Accordingly, 8 U.S.C. § 1202(b) does not create a specific, non-discretionary duty. See, e.g., Taj v. United States

9

Dep't of State, No. CV 22-1087, 2022 WL 17250302, at *5 (D.D.C. Nov. 28, 2022) (unpublished); Babamuradova, 2022 WL 4479801, at *8; Preston v. Ky. Consular Ctr., No. 6:22-CV-15, 2022 WL 3593052, at *11–15 (E.D. Ky. Aug. 22, 2022) (unpublished); Zarei, 2021 WL 9146060, at *1.

As for Ali's argument about 5 U.S.C. § 555(b), section 555(b) states, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Section 555(b) "merely restates a principle of good administration." Attorney General's Manual on the Administrative Procedure Act 65 (1947); see S. Utah Wilderness All., 542 U.S. at 63. Moreover, the Fourth Circuit, citing 5 U.S.C. § 555(b), has held that agencies are not required to adjudicate other visa programs. See Gonzalez, 985 F.3d at 365–67. Accordingly, the court does not have jurisdiction to review Ali's request for mandamus or his APA claim because 8 U.S.C. § 1202(b) and 5 U.S.C. 555(b) do not create specific, non-discretionary duties.

Alternatively, the court rejects as meritless Ali's request for mandamus and his APA claim. Section 706(1) of the APA authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Federal courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard." Norton, 542 U.S. at 63–64.

"There is no per se rule as to how long is too long to wait for agency action[.]" In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004) (cleaned up). In reviewing claims of alleged unreasonable delay, the Fourth Circuit has used the "TRAC factors." See Gonzalez, 985 F.3d at 375. The six TRAC factors are:

1. The time agencies take to make decisions must be governed by a rule of reason;

10

2. When Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3. Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4. The effect of expediting delayed action on agency activities of a higher or competing priority;

5. The nature and extent of the interests prejudiced by delay; and

6. The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80. These factors offer "useful guidance." Id.

The first two factors are "typically considered together." Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). The first factor is the most important. In re Core Commc'ns, Inc., 531 F.3d at 855. It requires the court to decide "whether the agency's response time . . . is governed by an identifiable rationale." Ctr. for Sci. in the Pub. Int. v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The second factor "may supply content for th[e] rule of reason." TRAC, 750 F.2d at 80. The first two factors favor the defendants. There is no statutory or regulatory time frame within which the State Department must adjudicate visa applications. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017); Bagherian, 442 F. Supp. 3d at 95. Although Ali argues that the total delay in processing his son's visa application is over two years and that courts have found delays over two years to be unreasonable in some cases, Ali has only been waiting on a response from defendants since, at the earliest, October 25, 2021, after USCIS approved Ali's Form I-130. See Compl. ¶ 15. And courts "have declined to find a two-year period to be unreasonable as a matter of law." Ghadami v. U.S. Dep't of Homeland Sec., No. 19-00397, 2020 WL 1308376, at *8 (D.D.C.

11

Mar. 19, 2020) (unpublished) (collecting cases). Accordingly, the first two factors favor the defendants.

As for the fourth factor, the effect of granting relief on the agency's competing priorities, this factor carries significant weight, and the court may deny relief under this factor alone. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). This factor weighs heavily in the defendants' favor. Ali asks the court to move his son's visa case ahead of other pending cases. "Relief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." Tate v. Pompeo, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting Sarlak, 2020 WL 3082018, at *6). A court should not compel agency action where the result would be merely to expedite the consideration of a plaintiff's request ahead of others. See Liberty Fund v. Chao, 394 F. Supp. 2d 105, 117 (D.D.C. 2005). Accordingly, because Ali's request means this court would have to move his son's visa case ahead of other pending cases, this factor heavily favors the defendants.

As for the third and fifth factor, the court looks to "the interests prejudiced by delay," including how delays affect "human health and welfare." TRAC, 750 F.2d at 80. Ali alleges that the delays in processing his son's visa application have profoundly affected him and his family, including causing immense stress, depression, and other family strife. See [D.E. 12] 16. The court acknowledges these difficulties, but the court also recognizes the many other individuals awaiting decisions on their visa cases. Accordingly, even assuming this factor favors Ali and his son, this factor does not overcome the other factors that weigh strongly in the defendants' favor. Cf. Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021); accord Bagherian, 442 F. Supp. 3d at 95–96.

As for the sixth factor, Ali concedes that the court need not consider this factor. See [D.E. 12] 17. Accordingly, based on the totality of the circumstances and the TRAC factors, the court

12

rejects Ali's request for mandamus and his APA claim. Cf. Mohammed v. Blinken, 548 F. Supp. 3d 159, 169–70 (D.D.C. 2021).

B.

As for Ali's due process claim, Ali alleges that defendants "failed to provide a reasonable and just framework of adjudication in accordance with applicable law." [D.E. 12] 18. Defendants respond that Ali fails to state a claim upon which relief can be granted. See [D.E. 11] 29–30; [D.E. 13] 10–11.

The Fifth Amendment guarantees that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To state a violation of either substantive or procedural due process, a plaintiff must allege a deprivation of her life, liberty, or property by the government. See, e.g., Kerry v. Din, 576 U.S. 86, 90 (2015); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam). In analyzing a due process claim, a court must first consider whether the stated liberty or property interest warrants constitutional protection. See Kerry, 576 U.S. at 90. If the court determines that the plaintiff lacks a liberty or property interest, then the court must dismiss the claim. See id.

It is not clear whether Ali brings a substantive or procedural due process claim. Either way, generally, "there is no property right in an immigrant visa." Mahmood, 2021 WL 5998385, at *9 (quotation omitted); Hamal v. U.S. Dep't of Homeland Sec., No. 19-cv-2534, 2020 WL 2934954, at *4 n.4 (D.D.C. June 3, 2020) (unpublished) (collecting cases). And noncitizens typically do not have a "constitutionally[ ] protected interest in the procedures by which . . . visas are obtained." Smirnov v. Clinton, 806 F. Supp. 2d 1, 12 (D.D.C. 2011); see Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959, 1983 (2020). Thus, Ali's due process claim fails.

13

In opposition, Ali cites Cruz v. Sullivan, 802 F. Supp. 1015, 1017 (S.D.N.Y. 1992). In Cruz, the court denied a motion to dismiss where plaintiff plausibly alleged that the Social Security Administration untimely responded to a claim for review of denial of social security benefits. See Cruz, 802 F. Supp. at 1016–17. Specifically, plaintiff alleged that after an Administrative Law Judge ("ALJ") denied her social security benefits, plaintiff requested review by the Appeals Council, and the review did not take place within the 60 days from the date of receipt of the notice of the ALJ's decision. See id.

Unlike in Cruz, no such 60-day deadline applies to Ali's visa application process for his son. See 9 FAM 504.4-6a. Moreover, United States citizens have a right to due process in resolving their social security benefits claims. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (collecting cases).

Ali also cites Bowen v. City of New York, 476 U.S. 467, 478–86 (1986) (addressing social security benefits claims), and Amberg v. Federal Deposit Insurance Corp., 934 F.2d 681, 687–89 (5th Cir. 1991) (addressing civil monetary penalty issued against a bank by the Federal Deposition Insurance Corporation), but those cases do not support a holding that there is a constitutionally protected property or liberty interest in the procedures by which visas are obtained. Notably, Ali does not cite any case recognizing a constitutionally protected property or liberty interest in the timely adjudication of a visa petition for a noncitizen relative. Indeed, district courts have dismissed nearly identical due process claims as the claim that Ali asserts. See, e.g., Begum, 2022 WL 16575703, at *9–10; Alshawy, 2022 WL 970883, at *7–8; Taj, 2022 WL 17250302, at *6. Accordingly, the court dismisses Ali's due process claim.

14

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 10] and DISMISSES WITHOUT PREJUDICE plaintiff's complaint [D.E. 1].

SO ORDERED. This _8_ day of June, 2023.

JAMES C. DEVER III
United States District Judge